CITY OF JERSEY CITY, PROSECUTOR, v. STATE WATER POLICY COMMISSION AND OAK RIDGE LAKE PARK REALTY COMPANY, INCORPORATED, A CORPORATION, RESPONDENTS.

Argued October 3, 1935—Decided December 11, 1935.

Before Justices CASE and BODINE.

For the prosecutor, *James A. Hamill* and *Charles A. Rooney.*

For Oak Ridge Lake Park Realty Company, Incorporated, *King & Vogt, Harry V. Osborne* and *Harold A. Price.*

For state water policy commission, *David T. Wilentz,* attorney-general, and *J. Raymond Tiffany.*

The opinion of the court was delivered by

CASE, J. The writ brings up a permit, with incidental proceedings, granted by the state water policy commission to Oak Ridge Lake Park Realty Company, Incorporated, for the construction of a dam known as Oak Ridge Lake Dam near Woodstock on Rockaway River in Morris county.

The realty company, acting under chapter 243 of the laws of 1912 (*Cum. Supp. Comp. Stat.* 1911-1924, *p.* 3800, § 232-37f) and section 11, *et seq.* of chapter 267 of the laws of 1929 (*Cum. Supp. Comp. Stat.* 1925-1930, *pp.* 1943 *et seq.,* § 232-37s(11) made application to the state water policy commission for permission to construct its dam in accordance with plans and specifications then filed. The application was

opposed by the city of Jersey City, whose water supply is impounded from the waters of the Rockaway river in a reservoir at Boonton, twenty-three miles below the dam site. The stated reasons for the opposition were, first, that the project embodied danger to the public health and, second, that the erection of the dam would result in diverting a large amount of water and thus would deplete the potable water supply of Jersey City. Testimony was taken and numerous exhibits were received in evidence, following which the water commission issued its permit and approved the plans and specifications for the dam upon certain named terms and conditions. In addition to the conditions that may be said to be routine to such an application there were others entitled "Special Conditions" introduced by the recital that they were imposed to the end that the possibility of pollution of potable waters might be minimized. The special conditions embraced requirements that the lake resulting from the building of the dam should be deepened to and maintained, at all points beyond five feet of the shoreline, at a depth of at least two and one-half feet below the spillway elevation; that all owners, grantees, lessees and occupants of property surrounding the lake should be limited in respects specifically described concerning the use of adjacent lands; that no privy or similar receptable should be permitted within one hundred feet of the nearest portion of the lake and that such a structure at a distance of more than one hundred feet should be built, and maintained at all times, in a manner satisfactory to the commission and to the state board of health so as to prevent extraneous matter from flowing over or upon the surface of the ground; that excremental matter be disposed of in manner stated; that the lake should not be opened to the general public but that its use should at all times be restricted to owners of surrounding property and to the members of their families and their *bona fide* guests, and that all deeds, grants, leases or other instruments to be thereafter executed by the applicant pertaining to the property owned by it and forming a basis for the use of the lake should have these conditions legibly printed therein with the requirement that the same should be strictly observed. The conditions were assented to by the applicant.

The prosecutor first contends that the commission failed to receive and consider lawful testimony concerning the effect which the erection of a dam and the impounding of the waters of the Rockaway river would have upon the quantity and quality of the flow of the river. This grounds in a statement made by the chairman of the commission at the beginning of the hearing wherein it was said that the jurisdiction of the commission over structures such as that involved in the application is confined to the imposition of such conditions, if any, as shall be necessary to preserve the channel and provide for the flow of water therein to safeguard the public against danger from the water impounded or affected by the structure, and that jurisdiction over the contamination of such water, after impounding, is for some other department. The prosecutor contends that that position is not sustained by the statute and that it was the duty of the commission to consider, not only the questions thus conceded to be within its province, but all other matters having to do with the quantity and quality of the flow of the river. It is to be recalled that the applicant was not seeking a new or additional source of water supply under the earlier portion of chapter 267, *Pamph. L.* 1929, *supra,* particularly beginning with the eighth paragraph, but was seeking the approval of its plans for building a dam with no purpose to draw any supply from the impounded waters. The only interest that the city of Jersey City had in opposing the application was to preserve the quality and quantity of its water at the Boonton reservoir many miles below the *locus in quo.* The fact is that the commission deviated from its initial position, received all of the testimony—considerable in character and extent—submitted on the issue that the project would deleteriously affect the quality of the water and reasonably safeguarded the prosecutor's water supply from pollution at the projected dam; and the applicant forthwith, in writing, formally accepted the conditions and agreed to abide by and fulfill them. We think that prosecutor's objective was attained.

It is next said by the prosecutor that the erection of the dam will materially diminish the water supply of the prosecutor. This is a summarization of prosecutor's contentions

and proofs to the effect that the damming of the water and the consequent increase of water surface would result in an added loss by evaporation of approximately fifty thousand gallons daily. That factual assertion was traversed by the applicant; and credible testimony by competent engineers was introduced to the effect that the loss by evaporation would be more than made up by the saving of ground loss due to the covering by water of long grasses in a marshy area near the stream. Aside from that, the maximum loss contended for by the prosecutor is but .0008 1-3 of prosecutor's average normal consumption and .0025 of the daily intake at the reservoir. Prosecutor's apprehension apparently is not that the present project will result in serious harm or loss but that the multiplication of such enterprises will do so, and therefore prosecutor has adopted the policy of opposing all such applications; to which it need only be said that each application must stand upon its own facts and be determined as and when presented. The point is not sustained.

Appellant's third point is that the erection of the dam and the impounding of the waters will impair the quality of the water of the prosecutor for potable purposes. We have already indicated our conclusion that the prosecutor's water supply is reasonably protected from pollution.

It is next said that the decision of the board is unreasonable and is not supported by credible evidence. That point, we think, is not well made.

Finally, it is contended that the commission in granting the permit acted contrary to public policy and the interests of a large and growing section of the state and abused its discretion. This point depends for its premises upon an affirmative determination of one or more of the preceding points; and as the earlier points have all been resolved against the prosecutor, so this one must be also.

We find that the prosecutor has not been injured in any of its rights and that it is not necessary for us to determine the extent of the authority of the commission over matters having to do with the quantity and quality of the flow.

The writ is dismissed, with costs.